**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lary I. HOOTEN, Defendant–Appellant.**

No. 90–5586
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 31, 1991.

George Scharman, San Antonio, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty. and Ronald F. Ederer, U.S. Atty., Solomon L. Wisenberg, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before POLITZ, SMITH, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Lary Hooten appeals his conviction and sentence resulting from a jury verdict of guilty on four counts of bank fraud and attempted bank fraud against the San Antonio Credit Union (in violation of 18 U.S.C. § 1344), one count of theft from the credit union (in violation of *id.* § 2113(b)), and one count of bribery in connection with Hooten's position with the credit union (in violation of *id.* § 215(a)(2)). Finding no error, we affirm.

## I.

We view the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Viewed in that light, the evidence showed the following:

Morris Jaffe, Jr., had signed a $1.5 million note with the credit union; Hooten, an Assistant Vice President of the credit union, was the loan officer on the loan. Shortly after executing the note, Jaffe found a message affixed to his car stating, "How much, if any, in cash would you be willing to pay to obtain the original note document which you owe on? J. Le-

counte." In the ensuing weeks, Jaffe received written messages and a telephone call offering to return the original note to him in return for $150,000. One of the letters was accompanied by a photocopy of the note stamped "PAID."

Jaffe reported these incidents to the Federal Bureau of Investigation (FBI). At an interview with an FBI agent, Hooten signed and verified a sample of his handwriting, then orally confessed to having effected the oral and written communications with Jaffe. Although Hooten refused to sign a written confession, he signed and verified the backs of the note, letter, and envelope sent to Jaffe.

A credit union employee testified that about the time of the letters and telephone call to Jaffe, Hooten had asked for a copy of the Jaffe note. Hooten obtained the original note from the employee and was seen at a copy machine with it, but the employee could not remember whether Hooten ever returned the original.

Hooten testified that he had committed the acts alleged in the counts charging fraud and attempted fraud but stated that he voluntarily terminated the scheme before its completion, never intended to defraud the credit union, never permanently took the original note, and never intended to send it to Jaffe.

## II.

■ Hooten contends that the evidence was insufficient to prove bank fraud and attempted bank fraud under section 1344. He argues that the *credit union* was not a victim and that under the attempted scheme it was *Jaffe* who would have claimed that the loan had been paid off and who thus would have deprived the credit union of the opportunity to collect. Moreover, Hooten claims that the credit union's money was never at risk, as the credit union, even without producing the original note, could have collected on the note under Tex.Bus. & Comm.Code Ann. arts. 3.407 and 3.804 and *McShan v. Watlington*, 133 S.W. 722, 722 (Tex.Civ.App.1911).

Hooten's theory, even if valid, shows only the possibility that the credit union would have been successful in a collection suit against Jaffe. The evidence at trial is sufficient to convict under *United States v. Church*, 888 F.2d 20 (5th Cir.1989). There, the defendant wrote two bogus bank drafts that had no value and could not possibly have been cashed. We nevertheless upheld the sufficiency of the evidence, stating that "[w]e are reluctant ... to cabin the reach of the bank fraud statute by our view of the implausibility of a particular scheme to defraud." *Id.* at 24. Here, the scheme to defraud had a better chance of succeeding than that in *Church;* therefore, Hooten's argument is to no avail.

Hooten also avers that Jaffe, not the credit union, was his intended victim. Under 18 U.S.C. § 1344(a)(1), the victim must be a federally chartered or federally issued institution. *See, e.g., United States v. McClelland,* 868 F.2d 704, 709 (5th Cir. 1989). Hooten asserts that the only effect of his successful execution of the scheme would have been the obtaining of money from Jaffe, not the credit union.

The government's theory, however, which the jury accepted, was that Hooten intended and tried to induce Jaffe to use the original note, stamped "PAID," to defraud the credit union. This constituted an attempt to execute a scheme to defraud the credit union. Moreover, the evidence indicated that Hooten actually did obtain the original note, and there is no evidence that he ever returned it, despite being asked twice to do so.

The conviction on count five, charging Hooten with stealing the note, is a further indication that his purpose was to cheat the credit union. And it is evident that Hooten knew that Jaffe was not interested in the original note, a mere piece of paper, for its own sake but only for use in defrauding the credit union. This distinguishes the instant case from *United States v. Briggs*, 920 F.2d 287 (5th Cir.1991), and *United States v. Blackmon*, 839 F.2d 900 (2d Cir. 1988), upon which Hooten relies. In those cases, there was no expectation that the victim necessarily would attempt to defraud a financial institution. *See, e.g.,*

*Briggs,* 920 F.2d at 290 ("The banks were not even exposed to liability....").

### III.

█ Hooten complains that a few days before trial, a grand jury returned a superseding indictment against him, adding 18 U.S.C. § 1346, a definitional statute, to the heading of the indictment, the heading and ending of counts one through four, and the end of the "scheme" paragraph of count one; the superseding indictment also added "and artifice" to the "scheme" paragraph. Section 1346 provides that the definition of "scheme or artifice to defraud" includes a scheme "to deprive another of the intangible right of honest services." Added in 1988, the provision was designed to ameliorate the effect of *McNally v. United States,* 483 U.S. 350, 360, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987), which held that Congress had not intended to include *intangible* property rights, such as the right to honest services. *See United States v. Marcello,* 876 F.2d 1147, 1149–50 (5th Cir.1989); *United States v. Bortnovsky,* 879 F.2d 30, 39 (2d Cir.1989).

Hooten argues that the "intangible rights" theory has been applied only to actions to deprive governmental entities, and hence "the people," of honest government. Hooten suggests that there is no unequivocal legislative intent to apply the post-*McNally* amendment to the new bank fraud statutes. Thus, Hooten argues that Congress intended, as to *financial* institutions, that the scheme must involve the taking of something tangible, i.e., of monetary value.

The government responds, convincingly, that sections 1344 and 1346 both are within chapter 63 of title 18. *See* Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 7603, 102 Stat. 4181, 4508 (1988). The statute plainly amends chapter 63 to state, *"For the purposes of this chapter,* the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." (Emphasis added.) Thus, section 7603 of the enactment undeniably applies section 1346 to section 1344.

In light of the statute's plain language, amply applying to Hooten as an *employee* of the credit union, we need not resort to speculation or legislative history to divine Congressional intent. *See United States v. Rojas–Contreras,* 474 U.S. 231, 235, 106 S.Ct. 555, 557, 88 L.Ed.2d 537 (1985). Nor has Hooten suggested any legislative history or other indication that Congress did not wish to apply the new definition to bank fraud. *See Oliver v. United States Postal Service,* 696 F.2d 1129, 1131 (5th Cir.1983) (per curiam) (plain language controls "absent a clearly expressed legislative intention to the contrary"); *United States v. Raymer,* 876 F.2d 383, 389–90 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 198, 107 L.Ed.2d 152 (1989).

█ Further in regard to the superseding indictment, Hooten asserts that the district court erred in denying his request for a continuance made after he received the superseding indictment. Hooten argues that the superseding indictment "presented a new offense, at least within the jurisprudence of this Circuit, i.e., bank fraud by scheme or artifice to deprive the bank of the intangible right to the honest services of its employees." Hooten claims that the government delayed the issuance of the superseding indictment until immediately before trial in order to gain a "technical advantage over defense counsel."

█ A defendant must make "more than an assertion of prejudice" to establish a claim of improper pre-indictment delay. *United States v. Varca,* 896 F.2d 900, 904 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 209, 112 L.Ed.2d 170 (1990). There must be a showing that "the delay was intended by the government to gain a tactical advantage," *id.,* and that the delay resulted in "actual and substantial prejudice." *United States v. Delario,* 912 F.2d 766, 769 (5th Cir.1990) (per curiam).

Hooten fails to mention, in his brief on appeal, that his attorney was told by the government on a Tuesday, six days before the Monday trial setting, that the government was taking a superseding indictment to the grand jury. Two days later, on

Thursday, Hooten's attorney received a copy of the superseding indictment. At the Friday docket call, Hooten's counsel averred that he would be prejudiced by the new document. The court gave counsel until Monday to demonstrate "some significant change in the indictment that causes you to have to reexamine your defensive theory or additional evidence that you must develop or something of that type." Hooten's counsel neither made, nor attempted to make, any such showing.

Consequently, Hooten failed to demonstrate prejudice. Nor, as the government points out, is it likely that Hooten could have shown any such prejudice, as section 1346 does not add a new offense but only defines a pre-existing term; so the facts in the original indictment would have supported a charge containing the definition from section 1346.

Hooten moreover has not shown intentional delay. The government told the district court that although it could have gone forward on the intangible rights theory without the additional language, it sought the superseding indictment "to remove any doubt on the question" and "out of an abundance of fair play ... to make it absolutely clear that that's what we're doing." Hooten presents nothing to rebut or call into question this statement. In summary, there is no error in the district court's handling of the superseding indictment.

## IV.

■ Next, Hooten attacks the conviction on count five, charging a violation of 18 U.S.C. § 2113(b), which requires proof of theft of a thing having a value of more than $100. Hooten contends that the note "was a mere piece of paper with no value of its own." As the note was not negotiable, Hooten claims that no value can be ascertained, since there would be no hypothetical willing buyer and willing seller.

■ We conclude that a rational trier of fact could have found the note to be worth well in excess of $100. Hooten apparently thought it worth at least $150,000, for that is the price for which he offered to procure it for Jaffe. We note, as well, that the conduct and expectations of a defendant and his associates can be considered in determining value. *See United States v. Langston*, 903 F.2d 1510, 1512–14 (11th Cir.1990) (per curiam); *United States v. Tyler*, 474 F.2d 1079, 1080–81 (5th Cir.1973) (per curiam). We have no difficulty, therefore, in deciding that the note's value exceeded the statutory threshold.

## V.

■ Count six alleged bank bribery in violation of 18 U.S.C. § 215(a)(2), which encompasses an officer or employee who "corruptly solicits or demands a thing of value." Hooten, observing that the indictment alleges that the expected benefit to Hooten (the $150,000) was to influence him "in connection with a transaction, the Jaffe Loan," argues that "payment of the loan is not effected [sic] by alteration or loss of the note.... Consequently, the government has failed to prove that [Hooten] corruptly solicited anything for himself in connection with any transaction involving the loan to Jaffe."

■ The government replies, correctly, that the attempted transaction with Jaffe was certainly "in connection with" the Jaffe loan, which was unpaid at the time of the scheme. Nothing in the language of the statute requires that the corrupt solicitation take place prior to the loan's funding. This point of error is without merit.

## VI.

Hooten was sentenced, under the federal sentencing guidelines, to thirty months' imprisonment, concurrently, on each count and a $1,000 fine. He raises two challenges to the sentence.

■ First, he claims that he should have been given a two-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. We uphold a sentencing court's decision not to award such a reduction unless it is "without foundation." *United States v. Garcia*, 917 F.2d 1370, 1377 (5th Cir.1990); *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989). This is a

degree of "deference on review greater even than that accorded under the clearly erroneous standard." *Garcia*, 917 F.2d at 1377.

■ Primarily, Hooten contends that he abandoned the scheme voluntarily; he believes that the court refused the reduction only because he insisted on a trial. The district court concluded, however, that Hooten had not abandoned the scheme and was untruthful to the authorities (by, for example, stating that he had not had possession of the original note). Thus, Hooten's decision to stand trial was only one of the factors mentioned in the presentence investigation report (PSI). Moreover, the court listened at allocution and made the determination that Hooten had "not clearly demonstrated recognition and an affirmative acceptance of personal responsibility for this conduct...." This evaluation is not without foundation and is best left to the district court.

### VII.

■ Finally, Hooten argues that in assessing punishment the district court inflated the value of the potential loss, resulting in an increase in the base offense level of nine rather than seven. The court found the amount of the loss to be $1,500,000 (the face amount of the note) rather than $150,000 (the sum solicited from Jaffe). The court was correct: The potential loss to the credit union was the entire $1,500,000. Hooten's argument is without merit.

We find no error in the judgment of conviction or the sentence. Accordingly, they are AFFIRMED.