**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 92-1775
Summary Calendar

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALFRED FRED BARAKETT, a/k/a
Robert John Koch and John Doe,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas

---

(June 25, 1993)

Before POLITZ, Chief Judge, HIGGINBOTHAM and WIENER, Circuit
Judges.

POLITZ, Chief Judge:

Alfred Barakett appeals convictions on four counts of bank
fraud in violation of 18 U.S.C. § 1344, three counts of interstate
transportation of forged securities under 18 U.S.C. § 2314, and two
counts of entering a bank with intent to commit a felony in
violation of 18 U.S.C. § 2113.  He also appeals the sentence
imposed.  Finding no error, we affirm.

## Background

In February 1985, Barakett met Lonnie Kay Yeager in Kansas City, Missouri, after obtaining her name through an organization called Parents Without Partners. He introduced himself as Daniel Joseph Merritt. The two met regularly for three weeks, after which Barakett disappeared. The following January, Barakett introduced himself to Janet Butler in Dallas, Texas, using the name Harold Robert Prince. Butler operated a business called Corporate Child Centers (CCC). Barakett gained Butler's confidence, promising marriage and financial security. Butler accepted Barakett's offer of assistance with the CCC checkbook. A few days later, Barakett accompanied Butler to the Allied American Bank in Dallas, where she, at his direction, consolidated her personal and business accounts and deposited therein an $8,750 check drawn on Ms. Yeager's account at the First Bank of Gladstone, Missouri. Butler gave Barakett $5,800 cash from the deposit transaction. Barakett then disappeared. First Bank of Gladstone refused payment on the deposited check, identifying it as a forgery, and Allied American deducted the $5,800 from personal funds which Butler had deposited in the CCC account.

Within the next 11 months, Barakett traveled from coast to coast, perpetrating similar schemes, using checks drawn on the CCC account. Each time, after gaining the confidence of a female victim under an assumed name and becoming involved in her finances, he would persuade her to deposit a forged CCC check, receive cash from the transaction, and then disappear. The evidence reflects

2

the following scenario:

| Month | Cash Received | Location |
|-------|---------------|----------|
| Jan. | $3,550 | Albequerque, NM |
| March | 2,950 | Reading, PA |
| April | 5,885 | Houston, TX |
| May | 6,850 | Greenville, SC |
| May | 6,750 | Grant's Pass, OR |
| July | 9,650 | Louisville, KY |
| July | 9,850 | Shepherdsville, KY |
| August | 9,540 | Bakersfield, CA |
| Nov. | 4,850 | Boise, ID |

Butler had closed the CCC account immediately upon learning of the first forgery; Allied American Bank refused payment on all CCC checks passed by Barakett. The banks into which Barakett procured deposit of the CCC checks generally deducted the "cash back" amounts from the victims' accounts. On at least two occasions, Barakett's victim had insufficient funds on deposit to cover the shortfall.[1]

In January 1990, Barakett's operations continued in Salt Lake City, Utah, when, calling himself John Mark Fields, he contacted JoAnn Loveless, whom he had met for the first time in September 1989. After a brief relationship with Loveless, Barakett disappeared. The following month in Dallas, Barakett introduced himself to Imogene Copp as Robert Crow, Jr. He accompanied Copp to a branch office of Bank One and persuaded her, over warnings from bank officers, to deposit a $9,440 check payable to her, drawn on Loveless's Salt Lake City account. Barakett disappeared after receiving $4,400 from this transaction. Loveless wisely had closed

---

[1] On these occasions, the victim repaid the bank with funds from other sources.

3

her account shortly after Barakett's disappearance; the Salt Lake City bank refused payment on the forged check.  Bank One charged the shortfall against Copp's account.

In March 1990, Barbara McGuire, acting at Barakett's direction, deposited a $9,250 check drawn on Copp's Bank One account to her California bank account.  Barakett received $4,750 cash back from that transaction before disappearing.  Bank One refused payment on the forged check.

The grand jury returned a nine-count indictment against Barakett.  Counts one and two charged bank fraud perpetrated on Allied American Bank in violation of 18 U.S.C. § 1344, arising from his use of the Yeager check and CCC checks, respectively.  Counts three and four charged bank fraud perpetrated on Bank One, arising from his use of the Loveless check and the Copp check, respectively.  Counts five through seven charged interstate transportation of forged securities in violation of 18 U.S.C. § 2314, arising from use of a CCC check in Idaho, the Loveless check in Dallas, and the Copp check in California.  Finally, counts eight and nine charged entry of a bank with intent to commit a felony affecting such bank in violation of 18 U.S.C. § 2113, arising from his entering Allied American Bank with Butler and Bank One with Copp.

A jury found Barakett guilty on all counts.  He was sentenced to 240 months imprisonment on count eight and five years probation

on counts one, two, and five.[2]  As to counts three, four, six, seven, and nine, under the Guidelines the court imposed 57-month prison terms to run concurrently with the sentence imposed on count eight, and three-year supervised release terms to run concurrently with the probation terms imposed on counts one, two, and five.[3] The district court also ordered payment of restitution to Copp and Davis, and the statutory assessments.  Barakett timely appealed.

## Analysis

### 1.  Limitations Period

Barakett first claims that the five-year limitations period of 18 U.S.C. § 3282 barred his prosecution on count eight of the indictment.  In **United States v. Arky**,[4] we held that failure to assert the statute of limitations at trial waives that affirmative defense.  Barakett's conceded failure to do so in the case at bar disposes of this issue.

---

[2]     The Sentencing Guidelines did not apply to the offenses charged in these counts, committed prior to November 1, 1987.

[3]     Under  the Sentencing Guidelines, the district court applied U.S.S.G. § 2F1.1 to arrive at an offense level of 17.  In view of the amount of planning, number of victims, and amounts of money involved in Barakett's conduct, however, the district court assessed a six-point offense level increase.  Finding Barakett's criminal history inadequately reflected by a criminal history score of zero, the district court likewise opted to sentence him under criminal history category II, resulting in a guideline sentencing range of 51-63 months imprisonment.

[4]     938 F.2d 579 (5th Cir. 1991), cert. denied, 112 S.Ct. 1268 (1992).

2.   <u>Sufficiency of the Evidence</u>

Barakett next challenges the sufficiency of the evidence supporting his bank fraud convictions.  Mindful that weight and credibility assessments lie within the exclusive province of the jury,[5] in considering this claim we must view the evidence and draw all reasonable inferences favorable to the verdict.[6]  If the evidence, so viewed, would permit a rational jury to find all elements of the crime beyond a reasonable doubt, we must affirm the conviction.[7]  The evidence need not, however, exclude all hypotheses of innocence.[8]  In order to convict Barakett under 18 U.S.C. § 1344, the government had to prove his knowing execution of or attempt to execute "a scheme or artifice -- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations or promises."[9]

---

[5]     **United States v. Garner**, 581 F.2d 481 (5th Cir. 1978).

[6]     **Glasser v. United States**, 315 U.S. 60 (1942).

[7]     **Jackson v. Virginia**, 443 U.S. 307 (1979).

[8]     <u>E.g.</u>, **United States v. Heath**, 970 F.2d 1397 (5th Cir. 1992), <u>cert</u>. <u>denied</u>, 113 S.Ct. 1643 (1993).

[9]     When Barakett committed the offenses charged in counts one and two of the indictment, 18 U.S.C. § 1344 punished knowing execution of schemes or artifices to defraud or obtain property through false promises, only from federally insured or chartered institutions.  In 1989, Congress substantially increased the penalties for bank fraud and amended the statute so that it reads

6

Barakett essentially contends that he intended to defraud only his female victims and thus did not execute schemes to defraud any financial institution.[10]  In support of this assertion, he claims that the institutions suffered at worst purely theoretical potential losses because they could and did recover from the victims.  This misperceives the law.

The term "scheme to defraud" does not admit of easy and precise definition,[11] but includes "fraudulent pretenses or representations intended to deceive others, in order to obtain money from the victim institution."[12]  While section 1344(1)

---

as above.  Financial Institutions Reform, Recovery, and Enforcement Act, Pub.L. 101-73, § 961(k), 103 Stat. 500 (1989).  Those amendments, however, do not affect our sufficiency analysis in the instant case.

[10]    Barakett also argues that he did not, by causing his female victims to present forged checks, use "false or fraudulent pretenses, representations, or promises" as required by section 1344(2).  The indictment against Barakett charged violation of and the jury instructions permitted conviction under either portion of section 1344.  The evidence fully supports Barakett's guilt under section 1344(1); we therefore need not consider Barakett's contention that the evidence could not support a conviction under section 1344(2).  Compare **United States v. Medeles**, 916 F.2d 195 (5th Cir. 1990) (where indictment alleged only violation of former section 1344(a)(2) and court instructed jury only as to that subsection, conviction could not rest on sufficiency of evidence under former section 1344(a)(1)).

[11]    **United States v. Saks**, 964 F.2d 1514 (5th Cir. 1992) (citing **United States v. Goldblatt**, 813 F.2d 619, 624 (3d Cir. 1987)).

[12]    **United States v. Church**, 888 F.2d 20, 23 (5th Cir. 1989) (citing **United States v. McClelland**, 868 F.2d 704, 709 (5th Cir. 1989)).

7

prohibits only crimes directed at financial institutions,[13] we have not held that the statute punishes only schemes directed <u>solely</u> at institutional victims.[14] We have recognized that knowing execution of schemes causing risk of loss -- rather than actual loss -- to the institution, can be sufficient to support conviction.[15] Barakett admits that he induced many victims to deposit forged checks drawn on Allied American Bank and Bank One. In so doing, he knowingly engaged in a scheme placing those institutions at risk.[16] Barakett likewise admits to inducing deposit of forged instruments at Allied American and Bank One by Butler and Copp. These deposits exposed both instututions to risk of loss, even though they ultimately recovered from Butler and Copp.[17] The evidence fully

---

[13] **United States v. Hooten**, 933 F.2d 293 (5th Cir. 1991).

[14] **Id.** (scheme by bank officer to defraud both institution and customer supports liability under section 1344).

[15] <u>E.g.</u>, **United States v. Lemons**, 941 F.2d 309 (5th Cir. 1991). Even proof of an extremely remote risk will suffice. **Church** (evidence sufficient to support conviction under former section 1344(a)(1) where defendant issued worthless drafts against nonexistent bank account).

[16] **Lemons** (forgery of endorsement on and deposit of check drawn on victim institution supports conviction under section 1344(1)).

[17] **Hooten** (mere availability of action against borrower attempting to avoid payment on note fraudulently marked "paid" by defendant bank employee would not eliminate risk of loss); <u>see</u> <u>also</u> **United States v. Frydenlund**, 990 F.2d 822 (5th Cir. 1993) (knowing execution of check-kiting scheme supports liability under section 1344(1)).

8

supports Barakett's bank fraud convictions.

### 3.    Multiplicity of Sentences

Barakett further asserts multiplicity in the sentences imposed on counts one and two, and counts three and four.  Relying on **United States v. Lemons**, he argues that counts one and two charge execution of a single scheme to defraud Allied American Bank, and that counts three and four do the same with respect to Bank One.  This argument patently is without merit.

In evaluating this claim, we must determine whether the punishments imposed comport with legislative intent.[18]  In **Lemons**, we considered a bank fraud indictment which charged a separate violation of section 1344 for each of six occasions upon which the defendant received funds from the bank.  We noted that, although the defendant improperly received bank funds on several occasions, the receipts resulted from a single scheme to defraud.  We therefore concluded that Congress intended their treatment as a single offense.  That, however, is not the case before us.  Barakett can identify no linkage between the conduct charged in counts one and two, or between that of counts three and four other than victim and *modus operandi*.  Because counts one through four involved separate fraudulent schemes, separate sentencing presents no multiplicity problem.

---

[18]     **United States v. Galvan**, 949 F.2d 777 (5th Cir. 1991). We must address this claim although raised for the first time on appeal.  **Id.** at 781.

## 4.    Jury Instructions

Barakett faults the district court's jury instructions as creating a substantial risk of non-unanimity of verdict. The jury charge permitted conviction on the bank fraud counts if the government proved beyond a reasonable doubt:

> That the defendant . . . devised a scheme or plan to defraud, or to obtain money by false or fraudulent pretenses and representations, from Allied American Bank or Bank One, as charged in the indictment.

According to Barakett, under these instructions his bank fraud convictions could have rested upon findings by some jurors that he executed schemes to defraud the victim institution and by others that he obtained the institution's property through false or fraudulent pretenses or representations. He therefore claims that the district court should have provided a special jury instruction to ensure unanimity before conviction.

Jury instructions on a single count embracing multiple separate offenses deprive a defendant of the right to unanimity where they create a genuine risk of conviction in the absence of unanimous juror agreement of the commission of one of them.[19] Assuming *arguendo* that sections 1344(1) and 1344(2) state separate offenses, however, we need not decide whether the district court erroneously charged the jury in the instant case. As Barakett necessarily concedes, his failure to request such an instruction at trial limits our review of the jury instructions to a search for

---

[19]    **United States v. Holley**, 942 F.2d 916 (5th Cir. 1991).

plain error.[20]  Under that standard, only error "which, when examined in the context of the entire case, is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings" admits of reversal.[21]  Here, the district court gave a general unanimity instruction,[22] and charged the jury on the bank fraud counts substantially as requested by Barakett.  Any defect in the challenged jury instructions did not rise to the level of plain error.[23]

    5.  <u>Sentencing Departure</u>

Finally, Barakett challenges the basis for and reasonableness of the six-point increase in the offense level in the sentencing on counts three, four, six, seven, and nine.[24]  District courts may

---

[20]  **United States v. Razo-Leora**, 961 F.2d 1140 (5th Cir. 1992); **United States v. Birdsell**, 775 F.2d 645 (5th Cir. 1985), <u>cert</u>. <u>denied</u>, 476 U.S. 1119 (1986); <u>see</u> Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the [trial] court.").

[21]  **United States v. Vontsteen**, 950 F.2d 1086, 1092 (5th Cir.) (*en banc*), <u>cert</u>. <u>denied</u>, 112 S.Ct. 3039 (1992).

[22]  We have recognized that such instructions generally suffice to ensure unanimity.  **Holley**.

[23]  **Razo-Leora** (in perjury prosecution where indictment alleged multiple perjurious statements, absence of special unanimity instruction as to each alleged perjurious statement not plain error).

[24]  Barakett does not challenge the district court's upward departure in criminal history category.  We note, however, that his foreign convictions, which did not enter into criminal history

impose sentences outside the range established by the Guidelines in cases presenting "aggravating or mitigating circumstance[s] of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."[25] District courts must, however, state on the record their reasons for departing from the guideline sentencing range,[26] and the degree of departure must be reasonable.[27] Where the district court determines that a case presents, in unanticipated degree, aggravating factors already taken into account by the Sentencing Commission, we review its decision to depart only for abuse of discretion.[28]

In the instant case, the district court justified its upward departure because criminal history category I failed adequately to reflect Barakett's background, and in view of "[t]he extended period of time over which the offenses were committed, the large

---

score calculations, fully support that departure. See U.S.S.G. § 4A1.2(h) ("Sentences resulting from foreign convictions are not counted, but may be considered under § 4A1.3 . . . ."); **id.** § 4A1.3 (district court may depart upward where criminal history score inadequately reflects seriousness of defendant's past criminal conduct of likelihood of recidivism).

[25]     18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0.

[26]     18 U.S.C. § 3553(c)(2).

[27]     E.g., **United States v. Lambert**, 984 F.2d 658 (5th Cir. 1993) (*en banc*).

[28]     **United States v. Davidson**, 984 F.2d 651 (5th Cir. 1993).

12

numbers of victims involved, which [were] both banks and individual females, [and] the amount of planning necessary to commit a continuing pattern of offenses of this magnitude." Barakett argues that the number of victims involved in his offenses could not provide a basis for departure in this case, and that in any event, the district court departed to an unreasonable degree.[29]

As Barakett points out, U.S.S.G. § 2F1.1(b)(2) permits a two-point upward offense level adjustment "[i]f the offense involved . . . a scheme to defraud more than one victim." The presentence report reflects that since 1984 Barakett has victimized at least 31, and perhaps as many as 56, women. We cannot conclude that the district court abused its discretion in determining that the Sentencing Commission did not, in framing the guidelines, anticipate conduct involving such a large number of victims.[30] Further, in view of the other reasons assigned for departure, which we find fully supported by the record, we do not conclude that the 27-month departure was unreasonable.

The convictions and sentences are AFFIRMED.

---

[29] Barakett also argues that sentencing on the basis of uncharged conduct violated his rights under the fifth and sixth amendments, and that the district court relied on insufficiently reliable evidence in assessing the upward departure. Because Barakett did not call these arguments to the attention of the district court, and failure to consider them now will not result in manifest injustice, we decline to do so. **United States v. Sherbak**, 950 F.2d 1095 (5th Cir. 1992).

[30] Compare **Davidson** (district court abused its discretion in departing upward to account for number of victims where defendants engaged in scheme to defraud seven insurance companies).