**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 19, 2013

No. 12-20443

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

GRADY DAVIS,

Defendant–Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before ELROD and HIGGINSON, Circuit Judges, and MARTINEZ, District Judge.[*]

HIGGINSON, Circuit Judge:

Defendant–Appellant Grady Davis was charged with one count of conspiracy to commit bank fraud and with six counts of the substantive offense of, and aiding and abetting in, bank fraud. The charges arose from Davis's alleged participation in a scheme to fraudulently obtain funds by straw credit card purchases. After a four-day trial, a jury acquitted Davis of the conspiracy

---

[*] District Judge of the Western District of Texas, sitting by designation.

count but found him guilty of each of the six bank-fraud counts. On appeal, Davis challenges, among other things, the sufficiency of the evidence undergirding the "financial institution" element of each of the bank-fraud crimes of conviction. Because we hold that the government did not support with sufficient proof the essential financial-institution element of the bank-fraud counts charged in the indictment, we REVERSE Davis's convictions and REMAND for further proceedings in accordance with this opinion.

## FACTS AND PROCEEDINGS

Counts Two through Seven of the indictment all charge that between approximately June 2008 and March 2010, Davis and his co-defendants, Gentry Wilson and Igor Dukhin,

> aiding and abetting each other, did knowingly execute and attempt to execute a scheme and artifice to defraud *American Express Company, which is a depository institution holding company* as defined in section 3(w)(1) of the Federal Deposit Insurance Act . . . .

(Emphasis added). Wilson and Dukhin struck plea deals, under which each agreed to plead guilty to the conspiracy charge in Count One of the indictment and to cooperate with the government. Davis entered a not-guilty plea, and went to trial.

At trial, the government introduced evidence that Davis played the central role of the "collusive merchant" in a "credit card bust-out scheme" in which Davis charged Wilson and Dukhin's fraudulently-obtained credit card for fictitious retail transactions. The three parties shared the reimbursement Davis subsequently received from the credit card company. Specifically, Dukhin testified that he and Wilson, looking to generate cash for a potential business venture, decided to obtain a high-limit corporate American Express credit card.

No. 12-20443

They purchased a shell corporation, which they renamed Applied Interests & Energy Development ("AIED"). They drafted and submitted an application on behalf of AIED for an American Express credit card, which American Express approved.

To extract cash from the card, Dukhin and Wilson enlisted Davis, who operated a luxury car dealership, to charge the card for fictitious purchases and, in exchange for a percentage of the proceeds, to wire the funds American Express provided. According to Dukhin, Davis negotiated to retain ten percent of the sums he transmitted and convinced his counterparts to charge a total of at least $1.2 million, a sum Davis believed would give him a sufficient return to make his effort worthwhile. The three men also agreed to mask their purchases as sales of tractor-trailer trucks for use in AIED's fictionalized petroleum operations. Before American Express put a stop to their enterprise, Wilson, Dukhin, and Davis had incurred over $621,000 in charges.

Most relevant for our purposes, the government called the lead investigating agent in the case, U.S. Secret Service Special Agent Christina Foley, to the stand. The district court permitted the government to elicit testimony from Foley concerning the structure of the victim financial institution, overruling Davis's objection "for lack of foundation and hearsay." The relevant sequence follows:

> Q [prosecutor]. Now, we typically think of American Express as just a credit card company. How is it that American Express is also a bank?
> . . . .
> [A Foley.] American Express is an FDIC-insured bank. So, American Express is their own banking institution; and they also have the credit card side of the house, as well. So, they are kind of two entities under one American Express.

No. 12-20443

Q. And in this particular scheme, was American Express the victim bank?

A. Yes.

Q. You mentioned earlier that American Express was an FDIC institution. I would like to bring to your attention Government's Exhibit 1.

Do you recognize this document?

A. Yes, ma'am.

Q. What is it?

A. It is the certificate that shows that American Express is FDIC insured.

Q. And did you obtain this document in conjunction with your investigation?

A. Yes, I did.

Q. Now, the whole idea of whether a bank is an FDIC institution, would it be fair to say either a bank is an FDIC intuition [sic] or it is not; is that correct?

A. Yes, that is correct.

Q. There's really no middle ground. So, it either is or isn't?

A. That is correct.

Q. And in this case American Express is an FDIC institution, correct?

A. Yes. That's why they were able to be able to produce the certification showing this.

Government's Exhibit One, referenced in the exchange, is a Federal Deposit Insurance Corporation ("FDIC") certificate for an entity named American Express Centurion Bank ("AECB") that is dated July 1, 1996.[1]

After the government rested its case, Davis moved under Federal Rule of Criminal Procedure 29 for a judgment of acquittal, arguing that the government did not sustain its burden of proving "each element of each count." The district

---

[1] Notably, the government called American Express Company fraud investigator Nicholas Bravos to the stand, but the parties did not elicit any testimony directly relevant to the indictment's charge that American Express Company is a depository institution holding company.

court denied the motion without comment. The defense then rested and did not call any witnesses. In closing argument, the government did not infer from the proof supplied any depository institution holding company relationship in addressing the financial-institution element of the bank-fraud counts. Instead, the government argued that AECB's FDIC-insurance certificate and the witness testimony described provided sufficient evidence to prove the financial-institution element.

In its jury charge on the substantive bank-fraud counts, the district court first repeated the language in Counts Two through Seven of the indictment, including that the defendants "did knowingly execute and attempt to execute a scheme and artifice to defraud American Express Company, which is a depository institution holding company as defined in section 3(w)(1) of the Federal Deposit Insurance Act . . . ." Apparently adapting the pattern jury instruction to delineate the obligatory elements of the bank-fraud offenses, however, *see* Fifth Circuit Pattern Jury Instructions (Criminal Cases) 2.61 (2012), the district court did not reiterate the indictment's depository holding company theory but instead specified an unindicted, alternative version of the financial-institution element. It informed the jury that to convict Davis it "must be convinced that the Government has proved for each count under consideration . . . beyond a reasonable doubt . . . [t]hat AMEX [defined earlier by the district court to stand for 'American Express Company'] was insured by the Federal Deposit Insurance Corporation."

As described, the jury found Davis not guilty of the conspiracy count. However, it returned a verdict of guilty for each of the bank-fraud offenses in Counts Two through Seven of the indictment. Following trial, Davis filed a renewed motion for a judgment of acquittal, arguing that the government did not

offer proof that "American Express Company" was a depository institution holding company as the indictment charged.  The district court denied the motion.  At sentencing, the district court imposed sentences of fifty-seven months of imprisonment and three years of supervised release for each of Counts Two through Seven, to be served concurrently.  The district court also found Davis jointly and severally liable with Dukhin for $421,997 in restitution to American Express.  Davis timely appealed.  *See* FED. R. APP. P. 4(b).

Davis's principal argument on appeal is that the government's proof of the financial-institution element of the bank-fraud counts, largely in the form of Agent Foley's testimony, was insufficient to support his convictions.  He urges this court to reverse his convictions and to remand to the district court to enter a judgment of acquittal on Counts Two through Seven.

## STANDARD OF REVIEW

When a defendant has timely moved for a judgment of acquittal, we review challenges to the sufficiency of the evidence de novo. *United States v. Winkler*, 639 F.3d 692, 696 (5th Cir. 2011) (citation omitted); *see United States v. Resio–Trejo*, 45 F.3d 907, 910 n.6 (5th Cir. 1995).  Even when examined de novo, "review of the sufficiency of the evidence is highly deferential to the verdict." *United States v. Moreno–Gonzalez*, 662 F.3d 369, 372 (5th Cir. 2011) (internal quotation marks and citation omitted).  "Viewing the evidence in the light most favorable to the government, we must determine whether any rational jury could conclude from the evidence presented at trial that the government had proven all of the elements of the offense beyond a reasonable doubt." *United States v. Carbajal*, 290 F.3d 277, 289 (5th Cir. 2002) (citation omitted).  Our de novo review, imbued as it is with deference, nonetheless necessarily requires us to consider trial evidence that countervails the jury's verdict, and allows us to

No. 12-20443

"draw upon only reasonable inferences from the evidence to support the verdict." *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011) (internal quotation marks and citation omitted).

## DISCUSSION

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The bank-fraud statute, 18 U.S.C. § 1344, punishes

> [w]hoever knowingly executes, or attempts to execute, a scheme or artifice—(1) to defraud a *financial institution*; or (2) to obtain any of the moneys . . . owned by, or under the custody or control of, a *financial institution*, by means of false or fraudulent pretenses, representations, or promises . . . .

18 U.S.C. § 1344 (emphases added); *see United States v. McCauley*, 253 F.3d 815, 819 (5th Cir. 2001). That the victim must be a statutorily defined financial institution, we have held, is "not only an essential element of the bank fraud crime, but . . . also necessary for the establishment of federal jurisdiction." *See United States v. Sanders*, 343 F.3d 511, 516 (5th Cir. 2003) (citations omitted); Fifth Circuit Pattern Jury Instructions (Criminal Cases) 2.61 (2012).

Davis urges that the government offered no proof on which a rational jury could find beyond a reasonable doubt that the government proved the financial-institution element the indictment charged in this case, namely that "American Express Company . . . is a depository institution holding company . . . . " The government maintains that it adequately proved fraud on American Express Company under a depository institution holding company rationale.[2]

---

[2] The government does not contest that Davis timely and adequately objected so that a de novo standard of review applies. *See Resio–Trejo*, 45 F.3d at 910 n.6.

No. 12-20443

In addressing Davis's challenge to the sufficiency of the evidence on the financial-institution element, we set foot on well-trodden terrain. This court has admonished the government to exercise care in satisfying its burden of proving the financial-institution element in prosecuting bank fraud and other bank-related offenses, lest it suffer a reversed conviction on a seeming technicality. *See United States v. Guerrero*, 169 F.3d 933, 944 (5th Cir. 1999); *United States v. Schultz*, 17 F.3d 723, 727–28 & n.11 (5th Cir. 1994); *United States v. Trevino*, 720 F.2d 395, 400 (5th Cir. 1983); *United States v. Platenburg*, 657 F.2d 797, 799 (5th Cir. Unit A Oct. 1981) ("[P]rosecutors have been extremely lax in the treatment accorded this element."); *United States v. Maner*, 611 F.2d 107, 112 (5th Cir. 1980) ("Hopefully the Attorney General will sense and remedy this national deficiency by directions pointing out the simple ways to prove this simple but indispensable fact."). We summon these exhortations once more as we compare the proof the law requires with the evidence the government presented the jury in this case.

As the indictment incorporates, a "financial institution" may be, among other things, "a depository institution holding company (as defined in section 3(w)(1) of the Federal Deposit Insurance Act [('FDIA')]." 18 U.S.C. § 20(6). The FDIA in turn provides that a "'depository institution holding company' means a bank holding company or a savings and loan holding company." 12 U.S.C. § 1813(w)(1). The FDIA incorporates by reference the definition of "bank holding company" as "any company which has control over any bank or over any company that is or becomes a bank holding company by virtue of this chapter." *Id.* § 1841(a)(1); *see id.* § 1813(w)(2). Thus, as the government agrees on appeal, in the context of this case, a depository institution holding company is a company that itself "has control over any bank," *id.* § 1841(a)(1).

No. 12-20443

As the government also references, federal law delineates three ways a bank holding company may "control" a bank:

> (A) the company directly or indirectly or acting through one or more other persons owns, controls, or has power to vote 25 per centum or more of any class of voting securities of the bank or company;
>
> (B) the company controls in any manner the election of a majority of the directors or trustees of the bank or company; or
>
> (C) the Board determines, after notice and opportunity for hearing, that the company directly or indirectly exercises a controlling influence over the management or policies of the bank or company.

*Id.* § 1841(a)(2).

The government acknowledged at oral argument that no witness at trial described or spoke of a "depository institution holding company," and none described the coordinate statutory requirements outlined above. Still, the government argues that it introduced sufficient evidence to permit the jury to find "that American Express Company was a bank holding company and that the bank it held was [AECB]." It states that it offered proof that American Express Company is a company that holds a bank, in the form of Agent Foley's testimony that

> American Express is an FDIC-insured bank. So American Express is their own banking institution; and they also have the credit card side of the house, as well. So, they are kind of two entities under one American Express.

The government specifies that it also offered proof that AECB is a bank by providing the 1996 certificate of FDIC insurance for AECB. Agent Foley answered affirmatively the government's question, "And in this particular

9

No. 12-20443

scheme, was American Express the victim bank?"  The government highlights that Davis did not cross examine Foley on this portion of her testimony.[3]

That evidence arguably may tend to show that "American Express" (read: American Express Company) was the victim of the offense and conducted business related to banking, and that AECB was a bank.  It perhaps could be read by a reasonable jury to find that American Express Company had a relationship to AECB.  It does not demonstrate, however, that American Express Company *controlled* AECB.  Foley's testimony, viewed to favor the verdict, does not mention AECB or American Express Company by name, let alone evidence the entities' relative positions within the greater American Express corporate structure.  There was no mention at trial of a third entity, American Express Travel Related Services, which the government admits is the intermediary through which American Express Company actually owns AECB.  Rather than depicting American Express Company's vertical relationship of control over

---

[3] We do not address Davis's additional challenge to the foundation of personal knowledge offered for Agent Foley's testimony at trial about American Express's corporate structure.  We assume *arguendo* that her testimony was properly admitted and determine that the government nonetheless offered insufficient proof on the financial-institution element of the bank-fraud crimes.  Nor need we decide Davis's alternative argument that the district court impermissibly constructively amended the indictment by allowing proof of an alternate theory of the financial-institution element.  *See United States v. Jara–Favela*, 686 F.3d 289, 299 (5th Cir. 2012) ("A constructive amendment may occur when the trial court through its instructions and facts it permits in evidence, allows proof of an essential element of the crime on an alternative basis provided by the statute but not charged in the indictment.") (internal quotation marks and citation omitted).  Significantly, the government does not defend that it presented sufficient evidence of any alternative, constructively amended theory, *see United States v. Mize* (*Mize I*), 756 F.2d 353, 355–57 & n.7 (5th Cir. 1985) (allowing retrial on remand where the government's proof of the *amended* theory was sufficient), *abrogated on other grounds as recognized by United States v. Dixon*, 273 F.3d 636, 639 n.1 (5th Cir. 2001); *United States v. Mize* (*Mize II*), 820 F.2d 118, 120 (5th Cir. 1987) (describing the holding in *Mize I*), urging instead that it proved the crime as charged in the indictment.

AECB, Foley's testimony appears to posit "two entities" in a horizontal relationship, as different "side[s] of the house."

In *Schultz*, 17 F.3d at 724, we reviewed bank-fraud and related bank-offense convictions in which the indictment charged that the victim, Texas Commerce Bank–Sugar Land ("TCB–Sugar Land"), was an FDIC-insured institution. The proof the government offered at trial, however, was the FDIC insurance certificate of another bank, TCB–National Association, and the testimony of TCB–Sugar Land officers vaguely referencing the fact that their bank was under the control of other Texas Commerce Banks. *Id.* at 725–26. This court rejected the government's argument that the evidence well proved that TCB–Sugar Land was FDIC insured by virtue of TCB–National Association's policy, noting that both the FDIC certificate's restrictions and Texas law limits on branch banking made that theory of umbrella insurance coverage unlikely. *Id.* at 726–27. The court observed that "[a]lthough we agree that the Government proved that TCB–Sugar Land was, in some way, related to TCB–Stafford, TCB–Houston, and to a larger, but nebulous, Texas Commerce Bank organization, we find that the Government failed to prove that TCB–Sugar Land was insured by the FDIC—whether under TCB–National Association's policy or otherwise." *Id.* at 726; *see also United States v. Alexander*, 679 F.3d 721, 727–28 (8th Cir. 2012) (citing *Schultz*, reaching a similar result with regard to Bank of America entities, and vacating the defendant's convictions for making false statements for the purpose of influencing an FDIC-insured financial institution). An analogous lack of clarity characterizes the evidence presented here. The trial testimony and exhibits do not address each relevant American Express entity's distinct corporate identity, nor does the evidence depict the entities' inter-relationship in anything other than oblique and inscrutable terms.

No. 12-20443

Such evidence, lacking in descriptive detail, was insufficient in *Schultz*, and we find it similarly inadequate here.

The government additionally points to its Exhibit Five, AIED's credit card account statements, which bear the American Express logo and name. Those statements do not, however, provide insight into the controlling relationship or corporate structure of the relevant entities. *Cf. Schultz*, 17 F.3d at 726 n.7 ("An FDIC logo on a check no more proves beyond a reasonable doubt that the bank in question has FDIC insurance than a National Basketball Association logo on a jacket proves that its wearer is a professional basketball player.").

The government finally cites other courts' descriptions, in civil suits raising unrelated claims, of American Express's corporate structure. *See, e.g.*, *Homa v. Am. Express Co.*, 558 F.3d 225, 226 (3d Cir. 2009) (describing AECB as a bank incorporated in Utah that issues American Express credit cards and explaining that American Express Company, a New York corporation, is AECB's ultimate parent), *abrogated on other grounds as recognized by Litman v. Cellco P'ship*, 655 F.3d 225, 230 (3d Cir. 2011); *Aneke v. Am. Express Travel Related Servs., Inc.*, 841 F. Supp. 2d 368, 370 n.2 (D.D.C. 2012). The government cannot carry its burden in this case by assuring us that other litigants, in other trial courts, in other legal contexts, have introduced the requisite evidence. *See Trevino*, 720 F.2d at 398; *United States v. Reasor*, 418 F.3d 466, 474 (5th Cir. 2005).

Reversal may be required even though the government might have discharged its burden of proof with relative ease. *See Schultz*, 17 F.3d at 727 (vacating bank-fraud convictions even though the government might have elicited the lacking evidence from bank officials who provided other testimony at trial); *Platenburg*, 657 F.2d at 799 (reversing a conviction and noting that this

court in *Maner*, 611 F.2d at 112, had previously "suggest[ed] a very simple and easy method of proving this element"). That fact cannot lessen the constitutional infirmity we are called to address. *See In re Winship*, 397 U.S. at 364.

We conclude that the government's evidence was not sufficient to prove a depository institution holding company theory of the financial-institution element. At bottom, to convict Davis on such a theory, a factfinder would be forced to strain the trial evidence beyond the limits even our justly deferential review of jury verdicts permits. We do not reach this conclusion lightly, particularly given the government's strong proof as to Davis's conduct relating to other of the elements of the bank-fraud offenses. We can only note, as we have previously, that greater attention to this issue at trial would advance the efficient and fair administration of criminal justice.[4]

## CONCLUSION

We hold that the government did not offer evidence sufficient for any reasonable jury to find beyond a reasonable doubt that American Express Company was a depository institution holding company, hence we REVERSE and REMAND for further proceedings in accordance with this opinion.[5]

---

[4] Indeed, in this case, inattention arguably led to further infirmity when the government in closing argument and the district court in the jury instructions referred to an uncharged theory of the financial-institution element.

[5] Our decision, resting as it does on insufficiency of the evidence, "compels dismissal of" the bank-fraud counts on remand, "not just remand for a new trial with better evidence." *Trevino*, 720 F.3d at 401; *see Burks v. United States*, 437 U.S. 1, 10–11, 16–18 (1978).