# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 30, 2018

Lyle W. Cayce
Clerk

No. 18-40036

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SILVIA BEATRIZ PEREZ-CEBALLOS,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, BARKSDALE, and WILLETT, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Following a jury trial, appellant Perez-Ceballos was exonerated of money laundering but convicted for bank fraud perpetrated upon a branch of J.P. Morgan Chase Bank under 18 U.S.C. § 1344(1). After carefully reviewing the record, we conclude there was insufficient evidence to sustain the conviction and therefore REVERSE.

## BACKGROUND

Silvia Beatriz Perez-Ceballos moved to the United States in May 2013 after her husband, Jose Manuel Saiz-Pineda, lost his position as Secretary of Finance and Administration for the State of Tabasco, Mexico, in the 2012 elections. She testified that she has not returned to Mexico since. Shortly after her arrival in Texas, in June 2013, Perez-Ceballos opened a bank account in

her name at J.P. Morgan Chase Bank ("Chase Bank") at its Richmond Sage branch in Houston. No false statements were alleged to have been made in connection with opening this account. Nevertheless, in 2017, Perez-Ceballos was convicted of defrauding Chase Bank based on her transfer of certain funds to and through this account.

To properly trace Perez-Ceballos's transfers of funds, it is necessary to backtrack several years. In 2010, while living in Mexico, Perez-Ceballos and her husband opened a securities account at HSBC U.S. Bank ("HSBC"). The couple represented to HSBC that the source of funds for the account was their accumulated savings and savings/employment. Perez-Ceballos acknowledged to the HSBC financial advisor, Sonia Fernandez, that she was a "politically exposed person" ("PEP"), a designation reserved for individuals who hold office in a foreign government and for their families. In 2012, after Fernandez transferred to UBS Financial Services ("UBS") and HSBC decided to close its PEP accounts, Perez-Ceballos and Saiz-Pineda contacted Fernandez and transferred their assets from HSBC to UBS. The PEP designation followed Perez-Ceballos and Saiz-Pineda when they transferred their assets to UBS because once someone is designated a PEP, she is always a PEP—even if she or her family member leaves office.

Perez-Ceballos and Saiz-Pineda maintained their account with UBS until the political upheaval in Mexico. After he was ousted from office, Saiz-Pineda was apprehended while trying to enter the United States in June 2013, after which he was arrested by the Mexican authorities and charged with illegal enrichment. Upon learning of his arrest, Fernandez notified Perez-Ceballos that UBS could no longer service the account and that she would need to transfer the assets elsewhere. Fernandez advised Perez-Ceballos of her options: she could transfer the assets in kind, which would require "a brokerage

relationship in the same name," or she could liquidate the account and "then send the money wherever it was that she had a relationship."

Around that same time, Perez-Ceballos was referred to Paul Arnold, an international financial advisor with Chase Investment Services Corporation ("Chase Investment"), to discuss potential investment strategies for the assets held at UBS. Arnold met exclusively with clients whose primary residence was outside the United States, because only non-resident aliens were eligible for the tax-exempt investments that he oversaw. During their consultation, Perez-Ceballos falsely told Arnold that her primary residence was in Mexico. Based on this misrepresentation and after discussing her investment aims, Arnold recommended that she apply for a brokerage account with Sun Life Financial, an insurance company registered in Bermuda that operates like a trust. Perez-Ceballos would not have been deemed eligible for this account if she had honestly informed Arnold that her primary residence was in Texas. Notably for jurisdictional purposes, neither Arnold's employer (Chase Investment) nor Sun Life Financial is FDIC-insured.

In the course of opening her Sun Life Financial account, Perez-Ceballos made several additional misrepresentations to Arnold and Sun Life Financial: she represented that she was separated from her husband; that she was not a PEP; and that she signed the requisite documents in Mexico where they had been mailed to her (as required) when in fact she signed them in Houston after she sent her brother to retrieve the documents and bring them back to the United States. Perez-Ceballos also gave Arnold a UBS statement from August 2013, from which she had removed Saiz-Pineda's name as a joint account holder.

In October 2013, having secured an account at Sun Life Financial, Perez-Ceballos liquidated her account at UBS, transferring over $1.9 million to her Chase Bank savings account. At Perez-Ceballos's direction, Chase Bank wired

that $1.9 million to Sun Life Financial. The funds did not return to Chase Bank after that point. However, in May 2017, Perez-Ceballos attempted to withdraw funds from Sun Life Financial and again falsely affirmed that she lived in Mexico. Had her withdrawal been successful, the $1.9 million would have most likely been transferred back to Perez-Ceballos's Chase Bank savings account.

This last series of transactions—the transfer of $1.9 million from UBS to Chase Bank to Sun Life Financial in 2013 and the attempted transfer of $1.9 million from Sun Life Financial back to Chase Bank in 2017—formed the heart of Perez-Ceballos's bank fraud conviction. Because the account at Sun Life Financial was procured by false misrepresentation, the government contends that the October 2013 transfer through Chase Bank and the May 2017 attempted transfer to Chase Bank exposed Chase Bank to a risk of loss.

In April 2017, Perez-Ceballos was indicted—along with Saiz-Pineda and another co-conspirator—on one count of conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956, and one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344, 1349. The original indictment alleged that Perez-Ceballos had executed or attempted to execute "a scheme and artifice to defraud Morgan Stanley Smith Barney, Royal Bank of Canada, and J.P. Morgan Chase Bank." The case went to trial. After the government rested, Perez-Ceballos moved for judgment of acquittal under Fed. Rule Crim. Pro. 29, based in part on the government's failure to prove FDIC-insured status for the banks listed in the indictment. The government conceded lack of federal criminal jurisdiction as to Morgan Stanley and the Royal Bank of Canada, but not as to Chase Bank. The district court accepted this concession and denied the motion as to Chase Bank. Following another unsuccessful attempt by Perez-Ceballos to dismiss pursuant to Rule 29, the jury acquitted Perez-Ceballos of money laundering but found her guilty of bank

fraud under 18 U.S.C. § 1344(1).  The jury rejected all forfeiture contentions, apparently for lack of sufficient evidence to hold that the property in question was derived from proceeds obtained through the alleged bank fraud conspiracy. Perez-Ceballos was sentenced to ten months' imprisonment.

Perez-Ceballos appeals her conviction, contending that (1) the government failed to establish federal criminal jurisdiction; (2) there was insufficient evidence to support her conviction; and (3) prosecutorial misconduct occurred at several points during trial.  Because this court reverses Perez-Ceballos's bank fraud conviction, the prosecutorial misconduct claim is moot; the following analysis is limited to issues of federal jurisdiction and evidentiary sufficiency.

## STANDARD OF REVIEW

"When a defendant has timely moved for a judgment of acquittal, we review challenges to the sufficiency of the evidence de novo."  *United States v. Davis*, 735 F.3d 194, 198 (5th Cir. 2013).  This same standard is used to review jurisdictional challenges based on lack of FDIC-insured status in prosecutions under 18 U.S.C. § 1344.  *Id.* at 198–99.  Nevertheless, "review of the sufficiency of the evidence is highly deferential to the verdict."  *United States v. Moreno-Gonzalez*, 662 F.3d 369, 372 (5th Cir. 2011) (internal quotation marks and citation omitted).  A conviction must be affirmed if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Vargas-Ocampo,* 747 F.3d 299, 301 (5th Cir. 2014) (en banc) (emphasis omitted).

## DISCUSSION

### I.    Federal Jurisdiction

To sustain a conviction for bank fraud under 18 U.S.C. § 1344, the victim bank must be FDIC-insured.  *See Davis*, 735 F.3d at 198.  "As this Court has repeatedly and consistently stated" when reviewing bank fraud convictions,

"proof of FDIC insurance is not only an essential element" of the crime, "but it is also essential for the establishment of federal jurisdiction." *United States v. Schultz*, 17 F.3d 723, 725 (5th Cir. 1994). Where the government fails to sufficiently prove the FDIC-insured status of the victim bank, this court has overturned bank fraud convictions for lack of jurisdiction. *See, e.g.*, *Davis*, 735 F.3d at 199 (collecting cases). Perez-Ceballos contends that her conviction should likewise be reversed because the government failed to prove beyond a reasonable doubt that Chase Bank, the only federally-insured institution remaining in the case, was the victim of any fraud. Absent proof that Chase Bank was defrauded, Perez-Ceballos argues, there is no federal jurisdiction.

We disagree. Whether Chase Bank was the victim of bank fraud goes to the merits of Perez-Ceballos's appeal, not to jurisdiction. In this circuit and others, courts generally wrestle with § 1344 jurisdiction when defendants are convicted of defrauding a *non*-FDIC insured institution. *See, e.g.*, *Davis*, 735 F.3d at 196, 200–01 (refusing to find jurisdiction where the defendant was convicted of defrauding American Express Company, which lacked FDIC-insured status); *Schultz*, 17 F.3d at 724, 726 (refusing to find jurisdiction where the defendant was convicted of defrauding TCB-Sugar Land, which lacked FDIC-insured status); *United States v. Edelkind*, 467 F.3d 791, 797–98 (1st Cir. 2006) (upholding jurisdiction where the direct victim was not FDIC insured after finding that Lehman Brothers, an FDIC-insured institution, was also victimized by the defendant's fraud). In this case, by contrast, the FDIC-insured status of Perez-Ceballos's alleged victim, Chase Bank, is established by the record. Both the indictment and jury instructions indicate that Perez-Ceballos was charged with defrauding Chase Bank, an FDIC-insured institution. The jury verdict confirms that Perez-Ceballos was convicted of defrauding Chase Bank, not Chase Investment or Sun Life Financial. Because the alleged victim bank is FDIC insured, jurisdiction exists.

No. 18-40036

## II.    Sufficiency of Evidence

Despite establishing jurisdiction, the government failed to produce sufficient evidence to convict Perez-Ceballos of defrauding Chase Bank.  Under 18 U.S.C. § 1344(1), a defendant is guilty of bank fraud if she "knowingly executes, or attempts to execute, a scheme or artifice—(1) to defraud a financial institution."    To sustain a conviction under this statute, the government must prove both intent to defraud and FDIC-insured status.  *See Loughrin v. United States*, 134 S. Ct. 2384, 2389–90 (2014) ("[T]he *first* clause of § 1344, as all agree, includes the requirement that a defendant intend to 'defraud a financial institution'; indeed, that is § 1344(1)'s whole sum and substance.") (emphasis in original).    "The essence of fraud is that its perpetrator has persuaded his victim to believe, beyond the dictates of reason or prudence, what is not so."  *United States v. Church*, 888 F.2d 20, 24 (5th Cir. 1989).  Intending "a scheme to defraud" has a broader definition that "includes fraudulent pretenses or representations intended to deceive others, in order to obtain money from the victim institution."    *United States v. Barakett*, 994 F.2d 1107, 1110–11 (5th Cir. 1993) (internal quotation marks and citations omitted).  Therefore, "[w]hile section 1344(1) prohibits only crimes directed at financial institutions, we have not held that the statute punishes only schemes directed *solely* at institutional victims.  We have recognized that knowing execution of schemes causing risk of loss—rather than actual loss—to the institution, can be sufficient to support conviction."  *Id.* at 1111 (internal citations omitted).

Even against this expansive backdrop, Perez-Ceballos's bank fraud conviction cannot stand.  First, the government failed to adduce evidence that Perez-Ceballos made any false statements to Chase Bank.  No Chase Bank witness testified at trial.  According to the evidence at trial, Perez-Ceballos's numerous false statements were all made either to Chase Investment (through

7

Arnold) or to Sun Life Financial. Neither the government's briefing nor oral argument cites evidence that clearly established (or even directly alleged) that Perez-Ceballos fraudulently made Chase Bank believe anything. The closest the government came to offering such proof occurred in a brief exchange in which Arnold testified that Perez-Ceballos was referred to him "from the banking side of JPMorgan [i.e., Chase Bank]," and that he "believe[d] it was the branch manager" who made the referral. At oral argument, the government insisted that this testimony justified an inference that Perez-Ceballos made misrepresentations to Chase Bank. Whether any misrepresentations by Perez-Ceballos to Chase Bank necessarily underlay this referral is, however, entirely speculative, and Arnold's minimal testimony did not connect the dots back to Chase Bank. Even viewing the evidence in the light most favorable to the verdict, these passing statements of a single witness unconnected with Chase Bank are insufficient for any reasonable trier of fact to conclude beyond a reasonable doubt that Perez-Ceballos persuaded Chase Bank to believe what was false. *See Church*, 888 F.2d at 24.[1]

Second, the government also failed to prove that Perez-Ceballos intended to "obtain money from the victim institution" or otherwise exposed Chase Bank to "risk of loss." *See Barakett*, 994 F.2d at 1111. The $1.9 million that Perez-Ceballos transferred to and through Chase Bank was *her* money, which she had authority to withdraw freely. Relying on the testimony of Arnold from Chase Investment and Fernandez from UBS, the government nevertheless

---

[1] There is some indication from the briefing that the government considers Perez-Ceballos's act of ordering a $1.9 million wire transfer from Chase Bank to Sun Life Financial to be a misrepresentation. However, as this court held in *United States v. Briggs*, "The bare act of instructing a bank to transfer funds is not a factual representation; thus, it cannot be a *mis*representation, a *false* representation, or *any kind* of representation." 939 F.2d 222, 226 (5th Cir. 1991) (emphasis in original). Although *Briggs* was reviewing a conviction under 18 U.S.C. § 1344(2), the same logic applies here.

insists that Chase Bank became vulnerable when it became the way-station for money transferred to a fraudulently-opened brokerage account. Under the government's theory, however, Arnold's and Fernandez's testimony on risk of loss was largely predicated on the assertion that Perez-Ceballos's funds were proceeds from a money laundering scheme. The jury's refusal to convict on money laundering removes that predicate, and the government offers no other evidence that Chase Bank suffered any risk of loss from the defendant's merely opening the account and moving from it money within her legal control.

Moreover, neither Arnold nor Fernandez worked for Chase Bank or spoke specifically to the risks that Chase Bank faced from Perez-Ceballos's misrepresentations. Their testimony focused primarily on the liability their own employers could face from the false statements Perez-Ceballos made to their institutions. Arnold did testify that Chase Bank "[a]bsolutely" has "to follow a lot of rules set forth by the OCC, the SEC, and other governmental entities" and that "if the bank doesn't follow those rules," it could be sued, cited, or fined.[2] Such generalized observations about banking industry regulations are a far cry from demonstrating that Chase Bank faced any risk of loss for depositing Perez-Ceballos's own money into her savings account and then transferring it at her request. Although risk of loss need not be "substantial" to support a conviction, the evidence on risk of loss does need to be sufficient. *See United States v. McCauley*, 253 F.3d 815, 820 (5th Cir. 2001) ("[T]he government need not prove a substantial likelihood of risk of loss to support

---

[2] Arnold was also asked on direct examination whether "if someone turns over falsified documents to the bank, either JP Morgan Chase or Morgan Stanley, could that potentially put [a] bank at risk of civil liability?" Although the question was phrased broadly, Arnold limited his response to his own experiences working in the investment sector, couching his reply almost entirely in "I" statements. In any case, because the government failed to show that Chase Bank received any falsified documents, this line of questioning was irrelevant for purposes of evidentiary sufficiency.

the convictions."). The evidence provided by the government here is insufficient.

In the absence of sufficient evidence that Perez-Ceballos made false statements to Chase Bank or that she made false statements to another party while intending to obtain money from Chase Bank in a way that exposed Chase Bank to a risk of loss, the government failed to prove that Perez-Ceballos defrauded Chase Bank. Without an FDIC-insured victim, there is no basis for upholding Perez-Ceballos's federal bank fraud conviction.

## CONCLUSION

For the foregoing reasons, Perez-Ceballos's conviction is REVERSED.