[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13631
Non-Argument Calendar
_____

D.C. Docket No. 5:18-cr-00503-AKK-SGC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RANDY EUGENE GREENE,

Defendant-Appellant

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(January 8, 2021)

Before JILL PRYOR, LAGOA and BRASHER, Circuit Judges.

PER CURIAM:

Randy Eugene Greene appeals his convictions, following a jury trial, and 30-month sentence for 11 counts of odometer tampering and three counts of bank fraud. He contends that there was insufficient evidence presented at trial to support his convictions and argues that, at sentencing, the district court erred in calculating the loss amount and in applying a two-level enhancement for obstruction of justice. After careful review, we affirm Greene's convictions and sentence.

## I.    BACKGROUND

A federal grand jury indicted Greene on 12 counts[1] of odometer tampering, in violation of 49 U.S.C. §§ 32703(2) and 32709(b), and three counts of bank fraud, in violation of 18 U.S.C. § 1344. The indictment alleged that Greene "knowingly disconnected, reset, and altered and had disconnected, reset, and altered" the odometers of 12 motor vehicles he sold, three of which were financed by Redstone Federal Credit Union. Doc. 1 at 1–13.[2] The three counts of bank fraud were based on the three vehicles purchased with loans the buyers obtained from the credit union. The indictment alleged that Greene knowingly defrauded Redstone when he received funds from the credit union for the sale of these three

_____

[1] The government dismissed one of the 12 odometer tampering counts, Count 6, because the alleged victim was unavailable to testify at trial.

[2] "Doc." numbers refer to the district court's docket entries.

vehicles, whose odometers displayed lower mileage than the vehicles actually had. Greene pled not guilty and proceeded to trial.

## A. The Criminal Trial

Over the course of a four-day jury trial, the government presented evidence establishing that Greene sold 11 vehicles whose odometers had been altered to reflect lower mileage, three of which were financed by Redstone Federal Credit Union. The jury heard from Greene's former employees, who testified about his practice of altering odometers on the cars sold by Greene's sales lot, RJ's Auto Sales.

Joseph Gaudet testified that he bought a car from Greene and then came to work for him at RJ's as a salesperson. Gaudet testified that while working for Greene he became concerned about the accuracy of odometers in vehicles they sold because he saw "odometers laying everywhere" and heard "customers complaining about the[ir cars'] miles." Doc. 75 at 28–29. This prompted Gaudet to investigate the mileage of the car he had purchased from RJ's, and he found paperwork indicating that his vehicle actually had higher mileage than the odometer indicated when he purchased it. Gaudet also testified that Greene asked him to hide documents and a computer disc showing that Greene altered odometers on the cars RJ's sold because Greene was being audited by the Internal Revenue Service.

3

Julian Curry, Greene's former repair person, testified that Greene instructed him to change the mileage shown on the odometer of at least five vehicles. On all but one such occasion, Greene instructed him to lower the mileage. Curry explained that typically when he repairs or changes the mileage on an odometer, the repair shop will provide documentation from Carfax—a service that provides a report of the vehicle's history—indicating the car's true mileage, but Greene never provided him with documentation. Instead, while working at RJ's, Curry would set the mileage to "[w]hatever [] Greene told [him]." Doc. 75 at 89.

The government also introduced evidence about the investigation into Greene. The United States Secret Service agent who performed the investigation testified that he identified 11 vehicles Greene purchased from auto auctions and then sold to consumers with lower mileage listed on the odometers than when Greene purchased them. The buyers of these 11 vehicles each testified that the mileage shown on the odometer of the car they bought was lower than the car's actual mileage and confirmed they would not have purchased the vehicle had they known its true mileage.

The jury also heard from Tara Perez, the senior assistant vice president of consumer lending at Redstone, who testified that for the three vehicles Redstone financed, the credit union received documents showing mileage that was lower than when Greene purchased the vehicles. Perez explained that the mileage was

4

used to determine the value of the cars, and, consequently, how much Redstone was willing to lend the buyers to purchase the cars.

Greene testified in his defense. He denied giving Gaudet any documents and said Curry was lying when he testified that Greene instructed him to lower vehicles' mileage. Greene told the jury that for all but two cars (the subjects of Counts 12 and 14), the reason for the differences in the mileage between when he purchased the vehicles and when he sold them was that the odometers did not work and thus had to be replaced. He testified that he personally did not participate in the three transactions with Redstone, but he confirmed that he made money from them. He also testified repeatedly that his salespeople told the credit union that the odometers in the three financed vehicles were inaccurate; however, he was unable to identify any Redstone personnel with whom his employees spoke.

At the close of the government's case, and again at the close of all evidence, Greene moved for a judgment of acquittal. Both times the district court denied Greene's motion because the evidence in the record was sufficient for the jury to find Greene guilty on all counts. The jury returned a verdict convicting Greene on all counts.

## B. Presentence Investigation Report and Sentencing

Before sentencing, the probation office prepared a presentence investigation report ("PSR"). Based on Greene's convictions, the PSR applied a base offense

level of seven pursuant to U.S.S.G. § 2B1.1(a)(1). The PSR recommended several enhancements to the base offense level. It determined that the aggregate loss amount was $109,103.95—the total purchase price of the 11 vehicles that were the subject of the trial, the vehicle belonging to the witness who was unavailable for trial, and two additional vehicles that were identified post-indictment. *See* U.S.S.G § 1B1.3(a)(2) (providing that enhancements "shall be determined on the basis of . . . all acts . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction"). The PSR contained a chart listing the purchase price of each vehicle. The PSR applied an eight-level enhancement because the loss amount was more than $95,000 but less than $150,000. *Id*. § 2B1.1(b)(1)(E). The PSR also recommended a two-level enhancement because the offense involved more than 10 victims. *Id.* § 2B1.1(b)(2)(A). And it applied a two-level enhancement for obstruction of justice because Greene perjured himself when he testified at trial. *See id.* § 3C1.1, cmt. n.4(B). After application of the three enhancements, Greene's total offense level was 19. The PSR arrived at a criminal history score of zero, resulting in a criminal history category of I. Based on his total offense level and criminal history category of I, Greene's recommended range of imprisonment under the Sentencing Guidelines was 30 to 37 months.

Greene objected to two of the enhancements in the PSR, the enhancements based on total loss amount and the enhancement for obstruction of justice. First,

6

he objected to the PSR's calculation of the total loss amount, arguing that the amount should reflect the purchase price paid by those victims who testified at trial and should not include the price of the vehicle purchased by the victim who was unavailable for trial or of the two vehicles discovered post-indictment. Second, he objected to the enhancement for obstruction of justice, arguing that it amounted to a "fair trial tax," Doc. 79 at 19, and that his testimony may have resulted from "confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice," Doc. 51 at 1 (emphasis omitted).

At the sentencing hearing, the district court overruled both objections. First, the court rejected Greene's objection regarding the loss amount calculation because although Greene's convictions were not based on the three vehicles he wished to exclude, the sale of these vehicles was "part of [the] relevant conduct" and showed "a common scheme or plan as the offense of conviction." Doc. 79 at 10. Second, the court concluded that the obstruction of justice enhancement was warranted because Greene's testimony contained "a litany of examples . . . that he engaged in blatant perjury." *Id.* at 20. For instance, Greene's testimony contradicted Curry's statement that Greene instructed him to lower the mileage on certain vehicles. The district court also found not credible Greene's insistence that Redstone knew the mileage on the vehicles was inaccurate, even though Greene

7

denied speaking with Redstone and could not identify anyone at the credit union with whom his employees purportedly spoke.

The district court calculated Greene's total offense level as 19 and his criminal history category as I, which yielded a Sentencing Guidelines range of 30 to 37 months' imprisonment. The court then imposed a within-guidelines sentence of 30 months' imprisonment and ordered Greene to pay $109,103.95 in restitution.

This is Greene's appeal.

## II.    DISCUSSION

Greene raises three arguments on appeal. First, he asserts that the government presented insufficient evidence to support his convictions for odometer tampering and bank fraud. Second, he contends that the district court improperly calculated the loss amount at sentencing. Third, he argues that the district court erred in applying a sentencing enhancement for obstruction of justice. We consider each argument in turn.

### A. There Was Sufficient Evidence to Support Greene's Convictions.

Greene argues that we must reverse his convictions because there was insufficient evidence to support the jury's verdict. We review the sufficiency of the evidence *de novo*, considering the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict. *United States v. Langford*, 647 F.3d 1309, 1319 (11th Cir. 2011). A jury is free to

choose among reasonable constructions of the evidence. *United States v. Godwin*, 765 F.3d 1306, 1320 (11th Cir. 2014). Thus, we may not overturn a jury's verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Capers*, 708 F.3d 1286, 1297 (11th Cir. 2013) (internal quotation marks omitted). Additionally, "[c]redibility determinations are left to the jury" and we will not disregard them unless the testimony is incredible as a matter of law, meaning it contains "facts that the witness could not have possibly observed or events that could not have occurred under the laws of nature." *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009) (internal quotation marks omitted). Applying this standard, we conclude that there was sufficient evidence to support Greene's convictions.

### 1. The Evidence Was Sufficient to Establish that Greene Committed Odometer Tampering.

To sustain a conviction for odometer tampering, the government was required to present evidence establishing, beyond a reasonable doubt, that Greene "disconnect[ed], reset, or alter[ed], or ha[d] disconnected, reset, or altered," the odometers of the 11 charged vehicles "intending to change the mileage registered by [each] odometer," 49 U.S.C. § 32703(2), and that he "knowingly and willfully violate[d]" the odometer tampering statute, *id.* § 32709(b). To establish a willful violation of a statute, "generally the [g]overnment must prove that the defendant

acted with knowledge that his conduct was unlawful." *United States v. Clay*, 832 F.3d 1259, 1308 (11th Cir. 2016) (internal quotation marks omitted). But "guilty knowledge can rarely be established by direct evidence"; thus, a jury may infer knowledge and intent from circumstantial evidence. *Id.* at 1309 (internal quotation marks omitted).

Greene concedes the government established that he sold "each of the vehicles listed in the odometer tampering counts" with an odometer showing mileage "lower than the actual mileage of the vehicle," but he argues that there was insufficient evidence to prove that he intended to change the mileage because his testimony offered a "reasonable explanation" for the lowered mileage on all but two of the charged vehicles. Appellant's Br. at 35, 41. Greene contends that the government's only support for the proposition that Greene intended to alter the odometers was Curry's testimony. We disagree.

Here, there was sufficient direct and circumstantial evidence to convict Greene on all counts of odometer tampering. In addition to Curry's testimony that Greene instructed him to change the mileage on at least five odometers, the jury heard Gaudet's testimony that Greene asked him to hide documents showing that Greene rolled back odometers on the cars RJ's sold. And, as Greene acknowledges, the government presented evidence that he sold the 11 vehicles with lower mileage than when he purchased them. The jury was entitled to credit

10

Gaudet and Curry's testimony and conclude that Greene altered, or had altered, the odometers in the 11 charged vehicles. *See Flores*, 572 F.3d at 1263 ("Credibility determinations are left to the jury").

Greene asks us to adopt his version of the events—that he had a reasonable explanation for the lowered mileage in all but two vehicles—but the jury's verdict indicates it rejected Greene's explanation. The jury was entitled to discredit Greene's testimony and treat it as evidence proving the opposite of what he said. *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) (stating that if a defendant testifies in his own defense, the jury is free to disbelieve that testimony and may determine that the opposite of his testimony is true).

We conclude that the evidence was sufficient for a reasonable factfinder to conclude beyond a reasonable doubt that Greene willfully tampered with the odometers of the charged vehicles. We therefore affirm his convictions on Counts 1–3, 5, 7–10, and 12–14.

### 2. The Evidence Was Sufficient to Establish that Greene Committed Bank Fraud.

The bank-fraud statute, 18 U.S.C. § 1344, provides "two alternative methods" for establishing the offense. *United States v. Dennis*, 237 F.3d 1295, 1303 (11th Cir. 2001). Subsection 1344(1) makes it a crime to "knowingly execute[], or attempt[] to execute, a scheme . . . to defraud a financial institution," 18 U.S.C. § 1344(1), and § 1344(2) criminalizes knowingly executing a scheme:

11

> to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises.

*Id.* § 1344(2).[3] The two subsections "overlap substantially but not completely." *Shaw v. United States*, 137 S. Ct. 462, 468 (2016). Subsection 1334(1) requires that a defendant intended to defraud a financial institution; by contrast, § 1334(2) does not require a "specific intent to deceive a bank." *Loughrin v. United States*, 573 U.S. 351, 356–57 (2014).[4]

Greene argues that the government failed to prove that he intended to defraud Redstone or that he made false statements to the credit union because the evidence presented at trial consisted only of "generalized observations." Appellant's Br. at 33. Additionally, Greene asserts that there was no evidence that intended to expose Redstone to a risk of loss, that Redstone faced risk or suffered any loss by making the loans at issue, or that Redstone's conduct would have been

---

[3] Proof of "federally-insured status of the affected institution" is a "jurisdictional prerequisite as well as an element of the substantive crime" of bank fraud under § 1344. *Dennis*, 237 F.3d at 1303 (internal quotation marks omitted). Greene and the government stipulated that Redstone Federal Credit Union was insured by the federal National Credit Union Association (NCUA), so this element is not at issue.

[4] The district court's jury instructions gave the jury the option to convict Greene for engaging in a scheme either to defraud a financial institution or to obtain money from a financial institution through false pretenses. However, the instructions incorrectly stated that either scheme required the jury to find that Greene intended to defraud a financial institution. As *Loughrin* instructs, only the former requires the specific intent to deceive a financial institution. *Loughrin*, 573 U.S. at 356–57. The court's error is harmless, though, because the government proved Greene intended to defraud Redstone. Additionally, we note that Greene failed to object to this jury instruction before the trial court, and he makes no argument on appeal that the jury instruction was erroneous.

different had it known the true mileage of the vehicles.  We reject Greene's arguments.

The jury had sufficient evidence to convict Greene of bank fraud.  Perez, a senior employee at Redstone, testified that the credit union received lower, inaccurate mileage for three of the vehicles it financed.  Perez explained that Redstone relied on the inaccurate mileage when assessing the vehicles' values and determining the appropriate loan amounts.  And Greene admitted that he profited from these three transactions.  Although Greene testified that he did not personally participate in the relevant transactions that led to the bank fraud charges, the jury was entitled discredit his testimony and believe that of Perez, Curry, and Gaudet.  *See Flores*, 572 F.3d at 1263; *Brown*, 53 F.3d at 314.

Greene cites the Fifth Circuit's decision in *United States v. Perez-Ceballos* for support, but his reliance is misplaced.  907 F.3d 863 (5th Cir. 2018).  In *Perez-Ceballos*, the Fifth Circuit reversed the defendant's conviction for bank fraud, holding that the government failed to produce sufficient evidence to support the conviction.  *Id.* at 867.  The defendant was convicted of defrauding Chase Bank but, as the court pointed out, no one from Chase testified at trial and there was no evidence that Chase received any of the defendant's false statements.  *Id.* at 868.  The government's case rested on "speculative" inferences and the testimony of non-Chase employees who primarily offered "generalized observations about

13

banking industry regulations." *Id.* at 868–69.  Thus, the Fifth Circuit determined, there was "no basis" for upholding the defendant's conviction. *Id.* at 869.  Here, in contrast, the jury heard from Perez, a senior employee at Redstone, who testified about the specific transactions underlying the three bank fraud counts.  And Perez confirmed that Redstone received from RJ's inaccurate mileage, which affected the values of the loans the credit union approved.  Therefore, *Perez-Ceballos* is inapposite.

We conclude that the jury had sufficient evidence to find that Greene defrauded Redstone and therefore affirm his convictions on Counts 4, 11, and 15.

**B. The District Court Did Not Err in Calculating the Loss Amount.**

Greene next challenges the application of the eight-level enhancement under U.S.S.G. § 2B1.1(b)(1)(E) for offenses with loss amounts between $95,000 and $150,000, arguing that the district court erred when it relied on the PSR, which calculated the loss amount as $109,103.95, the total sales price of the 14 vehicles with tampered odometers.  Before the district court, Greene contended that the appropriate loss amount was $86,418.37, the total sales price paid by the 11 victims who testified at trial.  On appeal, Greene argues instead that the district court plainly erred by using the full sales price of the vehicles without giving him credit for any inherent value the vehicles retained.  Greene now suggests that the loss amount should have been the difference between the amount each victim paid

14

for the car and the amount he or she could recover upon resale. Again, we disagree.

As Greene concedes, because he raises this argument for the first time on appeal, we review it for plain error. *United States v. Bonilla*, 579 F.3d 1233, 1238 (11th Cir. 2009). To "find plain error, (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights." *Id.* (internal quotation marks omitted). When "the explicit language of the statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Chau*, 426 F.3d 1318, 1322 (11th Cir. 2005) (internal quotation marks omitted).

Under U.S.S.G § 2B1.1, the loss amount is the greater of "actual loss"—the reasonably foreseeable pecuniary harm that resulted from the offense—or "intended loss"—the pecuniary harm the defendant purposely sought to inflict. U.S.S.G § 2B1.1(b)(1), cmt. n.3(A)(i), (ii). The district court "need only make a reasonable estimate of the loss," and the court's loss determination "is entitled to appropriate deference." *Id.* § 2B1.1(b)(1), cmt. n.3(C). The loss estimate must be "based on available information, taking into account, as appropriate and practicable under the circumstances, factors such as . . . [t]he fair market value of the property unlawfully taken . . . [and] [t]he approximate number of victims

15

multiplied by the average loss to each victim." *Id.* § 2B1.1(b)(1), cmt. n.3(C)(i), (iv).

The district court's loss calculation of $109,103.95, the total sales price of the 14 vehicles with altered odometers, is a "reasonable estimate" of the pecuniary harm that resulted from Greene's offense based on the information available to the court. *Id.* § 2B1.1(b)(1), cmt. n.3(C).  Although Greene objected to the *number* of vehicles used in the calculation, he never objected to using their total purchase price in the loss calculation, nor did he offer an alternative method for calculating the loss.  Without such objections, Greene effectively admitted that the purchase prices listed in the PSR were accurate, and "there was no call for the government to put on specific evidence" of the vehicles' former or inherent value at sentencing. *United States v. Rodriguez*, 751 F.3d 1244, 1257 (11th Cir. 2014); *see also United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005) (holding that failure to object to the PSR's factual statements constitutes admission of those facts).  The uncontested purchase prices of the vehicles was the only information available to the district court when it determined the appropriate loss amount; thus, the total of the purchase prices was a reasonable estimate of the loss.

Greene points us to a case from the Tenth Circuit that he contends supports calculating the loss amount as a fraction of the total purchase price. *See United States v. Sutton*, 520 F.3d 1259, 1263 (10th Cir. 2008).  In *Sutton*, the Tenth Circuit

16

affirmed a loss amount of 40% of the average purchase price of the vehicles with tampered odometers the defendant sold. *Id.* The *Sutton* court noted, however, that in the context of odometer tampering, "[the] loss may be calculated in a variety of ways." *Id.* at 1264 (collecting cases). But even if *Sutton* offers some support for Greene's argument, it is of course not binding on us. Greene has failed to identify any binding precedent—and we too find none—requiring that the loss calculation in an odometer tampering case be a percentage of the vehicles' total purchase price. *See Chau*, 426 F.3d at 1322 ("[T]here can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it" (internal quotation marks omitted)).

Therefore, we conclude that the district court did not plainly err when it calculated the loss amount and assessed Greene an eight-level enhancement.

## C. The District Court Did Not Err in Applying the Obstruction of Justice Enhancement.

Finally, Greene challenges the district court's application of a two-level obstruction of justice enhancement based on his testimony at trial. Greene acknowledges that the district court assessed the enhancement because his "testimony was contradicted by other witnesses," but he argues that these instances could be "chalked up to confusion or mistake" and "were not so severe as to warrant" the enhancement. Appellant's Br. at 44, 46. Greene also contends that

17

because he was exercising his right to testify, it was inappropriate for the district court to apply this enhancement. We discern no reversible error.

In evaluating a district court's imposition of an obstruction of justice enhancement, we review the court's findings of fact for clear error and the application of the Guidelines to those facts *de novo*. *United States v. Bradberry*, 466 F.3d 1249, 1253 (11th Cir. 2006). "A factual finding is clearly erroneous when, upon review of the evidence, we are left with a definite and firm conviction a mistake has been made." *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015). Where the facts give rise to "two reasonable and different constructions, the factfinder's choice between them cannot be clearly erroneous." *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012) (internal quotation marks omitted). And we "accord great deference to the district court's credibility determinations" regarding a perjury finding. *United States v. Singh*, 291 F.3d 756, 763 (11th Cir. 2002) (internal quotation marks omitted).

The Sentencing Guidelines provide for a two-level obstruction of justice enhancement if the defendant "willfully obstructed or impeded . . . the administration of justice with respect to the investigation, prosecution, or sentencing." U.S.S.G. § 3C1.1. A defendant may obstruct justice by committing perjury. *Id.* § 3C1.1, cmt. n.4(B). A defendant's testimony constitutes perjury when the testimony: (1) is made under oath or affirmation; (2) is false; (3) is

18

material; and (4) is "given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory." *Singh*, 291 F.3d at 763 n.4. A material statement is one which, "if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, cmt. n.6. District courts should include "specific findings as to each alleged instance of obstruction by identifying the materially false statements individually"; however, "a general finding that an enhancement is warranted suffices if it encompasses all of the [aforementioned] factual predicates necessary for a perjury finding." *Singh*, 291 F.3d at 763 (internal quotation marks omitted).

The district court's factual determination that Greene committed perjury was not clearly erroneous. The court provided a "litany of examples" to support the obstruction of justice enhancement. Doc. 79 at 20. These included, among others, Greene's denial that he instructed Curry to lower vehicle mileage and Greene's uncorroborated statement that his employees told Redstone the mileage on the relevant vehicles was inaccurate. Greene argues that the contradiction between his testimony and Curry's was "not as bad[]" as the district court found because Curry's testimony was "general," while Greene's was "more specific." Appellant's Br. at 44. As to his testimony regarding the credit union, Greene contends that he did not "completely contradict" Perez. *Id.* at 45. Although his testimony "may not have been the most accurate," Greene asserts it was "possible"

19

that he simply assumed his employees would have informed Redstone that the vehicles' mileage was unknown. *Id.*

We reject Greene's arguments. He testified that Curry was "lying" when he said Greene instructed him to alter vehicles' odometers. Doc. 78 at 48. He also repeatedly testified that RJ's told Redstone the mileage was incorrect as to the three vehicles at issue. Both statements are specific, material, and go beyond mere "confusion or mistake." Appellant's Br. at 46. Greene does not dispute the factual basis for the district court's decision; instead, he asks this Court to adopt his construction of the evidence. But, as explained above, where there are two reasonable and different constructions of the facts, "the factfinder's choice between them cannot be clearly erroneous." *Almedina*, 686 F.3d at 1315 (internal quotation marks omitted). Because the district court's construction is reasonable, we may not second guess it.

The district court's finding of obstruction of justice is supported by the record and we are not left "with a definite and firm conviction a mistake has been made." *Dimitrovski*, 782 F.3d at 628. Thus, we affirm the court's application of a two-level enhancement under U.S.S.G. § 3C1.1.[5]

---

[5] The government argues in the alternative that even if the district court erred in applying the obstruction of justice enhancement, any error was harmless because, at sentencing, the district court stated it would have imposed the same sentence in the absence of the enhancement. We need not address this argument, however, because we affirm the district court's application of the enhancement.

## III.    CONCLUSION

For the foregoing reasons, we affirm Greene's convictions and sentence.

**AFFIRMED.**